UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDRES FRANQUI et al.,

    Plaintiffs,

v.                                   Case No.: 8:12-cv-01257-T-27MAP

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

This dispute involves the denial of a claim for sinkhole loss made under a homeowner's policy issued by Liberty Mutual to the Franquis. The dispute focuses on the construction of an undefined term in the sinkhole loss coverage provision of the policy. Before the Court is Plaintiffs' Motion for Summary Judgment Pursuant to Joint Stipulation of Fact (Dkt. 47) and Defendant's opposition (Dkt. 55). Notwithstanding the Joint Stipulation of Fact (Dkt. 39) and the parties' attempts to narrow the issues for trial, they remain at odds with respect to what constitutes "structural damage," as that term is used in the policy to define "sinkhole loss." And notwithstanding my earlier construction of the term "structural damage," the parties disagree on what constitutes "damage to the structure."

Considering the parties' renewed arguments, and particularly in light of Defendant's contention that "in the event that this Court instructs the jury that the term 'structural damage' means something other than simply 'damage to the structure' then material issues of fact remain as to whether Plaintiffs have met their burden," my construction of the term "structural damage" in the policy as "damage to the structure" (*see* Dkt. 22) remains incomplete, in that it fails to distinguish

between cosmetic damage to the building's structure and damage to the structural components of the building.[1] I therefore exercise my prerogative under Rule 60(a), Fed. R. Civ. P., to reconsider construction of the term, and vacate the prior summary judgment orders, Dkts. 15 and 22.[2]

Finding that the phrase "structural damage to the building" should be construed as " damage to the structural components of the building, excluding damage that is cosmetic in nature," Defendant's Motion for Summary Judgment (Dkt. 11) is **DENIED**, Plaintiffs' Motion for Partial Summary Judgment (Dkt. 17) is **GRANTED *in part*** and **DENIED *in part***, and Plaintiffs' Motion for Summary Judgment Pursuant to Joint Stipulation of Fact (Dkt. 47) is **DENIED**.

## I. INTRODUCTION

The homeowner's policy issued by Liberty Mutual contains the following language providing coverage for damage caused by sinkholes:

> **SECTION I - PERILS INSURED AGAINST**
>
> The following perils are added:
>
> **Sinkhole Loss**
>
> **a.** *Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity.* Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.
>
>> **(1)** We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.
>
> **b.** Sinkhole Activity means settlement or systematic weakening of the earth supporting such property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock

---

[1] I reach this conclusion, notwithstanding that the majority of courts in Florida, and at least two of my Middle District colleagues, have construed the term "structural damage" as I did. (*See* Dkts. 56-1, 56-2).

[2] Defendant correctly anticipated that the prior summary judgment orders would be revisited: "If the Court were to amend its orders to adopt a different interpretation for the term 'structural damage' that imposes some threshold of damage below which the damage is not 'structural,' Liberty Mutual asserts that there remain questions of material issues of fact as outlined above[,] fact that would compel the court to deny Plaintiffs' Motion for Summary Judgment." (Dkt. 55 at 15).

2

> materials into subterranean voids created by the effect of water on a limestone or similar rock formation.
>
> The SECTION I - Earth Movement exclusion does not apply to this peril.

(Dkt. 11-1 at 30) (emphasis added).

Plaintiffs' claim for sinkhole damage to their residence was denied by Liberty Mutual, which took the position that the damage did not constitute "sinkhole loss" as defined in the policy. Specifically, Liberty Mutual informed Plaintiffs that their residence had not sustained "structural damage" and the policy did not provide coverage for "wear and tear, latent defect, and settling" (Dkt. 18-2 at 1). Plaintiffs filed suit against Liberty Mutual alleging breach of contract, which was removed to this Court. Liberty Mutual answered and filed a Counterclaim for declaratory judgment that the policy does not provide coverage unless the loss includes "damage that impairs the structural integrity of the building" (Dkt. 3 at 10 ¶ 40).

Both parties thereafter filed motions for summary judgment. In Liberty Mutual's motion (Dkt. 11), it argued that the five-part definition of "structural damage" in the May 17, 2011 amendments to § 627.706, *Florida Statutes*, should be applied retroactively. It also argued that the term "structural damage" as used in the policy is not ambiguous and should be afforded its plain meaning, which Liberty Mutual argues is consistent with the revised definition in § 627.706. The motion was denied on all grounds (Dkt. 15).

After Liberty Mutual's motion was denied, Plaintiffs filed their motion for partial summary judgment (Dkt. 17). Plaintiffs sought (1) an order granting partial summary judgment on the breach of contract claim based on Liberty Mutual's failure to conduct an investigation as required by § 627.707, *Florida Statutes*; (2) an order granting partial summary judgment on Plaintiffs' argument that the definition of "structural damage" in § 627.706 cannot be applied retroactively; and (3) an order granting partial summary judgment on the proper definition of "structural damage." The

motion was denied on the first ground but granted on the second and third (Dkt. 22). Specifically, it was reiterated that the definition of "structural damage" found in the 2011 amendments to § 627.706 could not be applied retroactively. Secondly, the term "structural damage" was found to be unambiguous and construed as "damage to the structure" (*see* Dkt. 22 at 3).[3]

After the pretrial conference, the parties filed their "Joint Stipulation of Fact and Plaintiffs' Request for Verdict on Facts" (Dkt. 39), purportedly based on the construction of the term "structural damage" as "damage to the structure." The parties stipulated to only three facts: (1) there is damage to the structure; (2) Liberty Mutual's expert cannot eliminate sinkhole activity as a cause of the damage to the building; and (3) the cost to repair all present damage and damage anticipated by Plaintiffs' experts is $42,433.11 (Dkt. 39 at 3). The parties contended that these stipulated facts left no further factual determinations for the jury. Plaintiffs then filed a motion for summary judgment based on the stipulation, which is pending.

## II. STANDARD

District courts may "correct . . . a mistake arising from oversight or omission whenever one is found in a judgment, order, or other party of the record . . . on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law.

---

[3] Citing *Avramides v. Liberty Mutual Fire Ins. Co.*, Case No. 8:12-cv-2104-T-27TGW (M.D. Fla. Dec. 11, 2012); *Ayres v. USAA Cas. Ins. Co.*, No. 8:11-cv-816-T-24TGW, 2012 WL 1094321, at *4 (M.D. Fla. Apr. 2, 2012); *Zawadski v. Liberty Mut. Fire Ins. Co.*, No. 8:12-cv-950-T-30MAP, 2012 WL 3656456, at *6 (M.D. Fla. Aug. 23, 2012).

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

## III. DISCUSSION

Two distinct issues are presented, both concerning the proper construction of the sinkhole loss clause in the policy. First, Liberty Mutual again argues that the definition of "structural damage" in § 627.706, *Florida Statutes*, should be applied retroactively to Plaintiffs' policy. Second, although Plaintiffs and Liberty Mutual both contend that the term "structural damage to the building" is unambiguous, they disagree on how the term should be interpreted.

### A. Retroactivity

In the Order denying Liberty Mutual's motion for summary judgment (Dkt. 15), Defendant's retroactivity argument was expressly rejected, based on this Court's order in *Bay Farms Corp. v. Great Am. Alliance Ins. Co.*, 835 F. Supp. 2d 1227 (M.D. Fla. 2011) (Whittemore, J.). In *Bay Farms*, I determined that the definition in the 2011 amendments to § 627.706 could not be applied retroactively to policies issued prior to the effective date of the amendments. There is no reason to depart from this conclusion.

### B. Interpretation of the Phrase "Structural Damage to the Building"

#### 1. *Canons of Insurance Policy Interpretation*

In Florida, an insurance policy is considered a contract and ordinary contract principles therefore govern the policy's interpretation and construction. *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002), The interpretation of an insurance policy, including a determination and resolution of any ambiguity, are questions of law. *Id.*; *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993) (citing *Sproles v. Am. States Ins. Co.*, 578 So. 2d 482, 484 (Fla. 5th DCA 1991); *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985)).

In general, coverage clauses in insurance policies are interpreted in the broadest possible

manner to effect the greatest amount of coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 5th DCA 1997). In contrast, exclusionary clauses are strictly construed in a manner that affords the broadest possible coverage. *Id.* And insurance polices are construed in accordance with their plain language. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). As with other contracts, an insurance policy should receive a construction that is "reasonable, practical, sensible, and just." *Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc.*, 874 So.2d 26, 29-30 (Fla. 2d DCA 2004). And terms in a policy "should be read in light of the skill and experience of ordinary people." *Id.*

Importantly, for purposes of the instant motions, when a term is left undefined in a policy or the policy fails to include qualifying or exclusionary language, an insurer cannot insist upon a narrow, restrictive interpretation of the coverage provided. *Nat'l Merch. Co., Inc. v. United Service Auto. Ass'n*, 400 So.2d 526, 530 (Fla. 1st DCA 1981). When a word or phrase remains undefined, common everyday usage determines its meaning. *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1028 (Fla. 3d DCA 1989). The terms in an insurance policy "should be construed in light of the skill and experience of ordinary people." *Brill v. Indianapolis Life Ins. Co.*, 784 F.2d 1511, 1513 (11th Cir.1986).

That a word or phrase is not defined in the policy, however, does not render that term or phrase ambiguous and in need of interpretation. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). "Courts may not rewrite contracts or add meaning to create an ambiguity." *Dahl-Eimers*, 986 F.2d at 1382 (citing *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). There must be "a genuine inconsistency, uncertainty, or ambiguity in meaning [that] remains after resort to the ordinary rules of construction." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979).

Policy language is ambiguous if it "is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004). When language in a policy is ambiguous, the ambiguity must be resolved in favor of the insured by adopting a reasonable interpretation of the policy language that provides coverage, as opposed to one that would limit coverage. *PCR*, 889 So. 2d at 785-86. In other words, ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the insurer. *Anderson*, 756 So. 2d at 34. And relevant here, differing interpretations of the same provision are evidence of ambiguity, particularly when a term is not explicitly defined or clarified by the policy. *Dahl-Eimers*, 986 F.2d at 1382 (citing *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299 (Fla. 1st DCA 1992)).

### 2. *Determination of Ambiguity*

Both parties contend that the phrase "structural damage to the building" is unambiguous and should be read according to its plain meaning. They disagree, however, on how the phrase should be read. Unsurprisingly, the interpretation asserted by each party favors that party, one providing coverage and the other restricting coverge. This difference of opinion is itself evidence of ambiguity. *Dahl-Eimers*, 986 F.2d at 1382.

Neither the term "structural damage" nor "structural damage to the building" is defined in the policy. "In construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries." *Watson v. Prudential Property & Cas. Ins. Co.*, 696 So.2d 394, 396 (Fla. 3d DCA1997) (citing *Brill*, 784 F.2d at 1513). The Merriam-Webster Dictionary defines "structural" as "of, relating to, or affecting structure." Similarly, "structural," in the context of "structural damage," has been defined as "[a]ffecting structure," and "of, relating to, or forming part of the structure of a building." The Free Dictionary by Farlex. The Oxford English Dictionary similarly defines "structural" as "of or pertaining to

structure." This dictionary includes a second definition, however: "Of or pertaining to the structure of a building *as distinguished from its decorations or fittings*."

This second definition in the Oxford English Dictionary is consistent with what a reasonable, ordinary person would consider the phrase "structural damage to the building" to mean. An ordinary person would not consider cosmetic or aesthetic damage to a building or damage to the "decorations or fittings" of a building "structural damage." The ordinary meaning of the term "structural damage to the building" therefore reasonably excludes cosmetic or aesthetic damage to the building or damage to its decorations or fittings. Whether a particular item of claimed damage falls within this construction would be a question of fact for the jury.[4]

This conclusion does not end the analysis, however. Although cosmetic damage is reasonably excluded under the construed terms of the policy, the extent of damage required to trigger the sinkhole loss provision remains problematic. On the one hand, the phrase "structural damage to the building" could be interpreted as requiring damage that impairs the integrity of the building through harm to the load-bearing parts and material that ensure the building's integrity. *See, e.g., Bonitch v. Liberty Mut. Fire Ins. Co.*, Case No. 8:12-cv-770-T-26TBM, Dkt. 69 at 1 (M.D. Fla. Sep. 27, 2013); *Gonzalez v. Liberty Mut. Fire Ins. Co.*, ___ F. Supp. 2d ___, No. 8:12-cv-02549-SDM-EAJ, 2013 WL 5913515 (M.D. Fla. Oct. 31, 2013).[5] On the other hand, a reasonable interpretation of the phrase requires only damage to the structural components ("of or pertaining to structure") of the building,

---

[4] In discussing structural damage to a residence, one treatise provides this example: "Structural damage above ground appears in the form of cracks to the interior and exterior walls of the residence." 51 AM JUR TRIALS 493.

[5] In *Gonzalez v. Liberty Mutual Fire Ins. Co., supra*, the Court interpreted "structural damage" to require that damage from a sinkhole "impair the integrity of the building," which would be "expected to cause a portion of that building to collapse or fail." That construction would require more than non-cosmetic damage to a structural component of the building, and as noted, would limit, rather than broaden, coverage. And, with all due respect, that construction would be at odds with another general rule of insurance policy interpretation, that terms in a policy are to be read "in light of the skill and experience of ordinary people." *W. Fla. Village Inn*, 874 So.2d at 29-30. The perspective of a structural engineer or one with expertise in the structural integrity of buildings would not be representative of the perspective of an ordinary person.

8

without regard to whether the integrity of the building is compromised. The former definition would restrict coverage in favor of Liberty Mutual, while the latter definition would afford broader coverage to Plaintiffs, consistent with the insurance policy interpretation in Florida. *PCR*, 889 So. 2d at 785-86 (ambiguity must be resolved by adopting a reasonable interpretation of policy language that provides coverage as opposed to a reasonable interpretation that would limit coverage). And this conclusion is consistent with the admonition in *Dahl-Eimers* that Liberty Mutual cannot insist upon a narrowly drawn interpretation of the phrase and its attendant benefits, after failing to define the phrase or provide any additional qualifying or exclusionary language in the policy. *See Dahl-Eimers*, 986 F.2d at 1382 ("The insurer cannot, by failing to define the terms . . . or to include any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided.") (quoting *Nat'l Merch.*, 400 So. 2d at 530).

In sum, the phrase "structural damage to the building" is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage," and is therefore ambiguous. *PCR Inc.*, 889 So. 2d at 785.

### 3.     *Construction of the Ambiguous Phrase*

As part of a coverage clause, the phrase "structural damage to the building" must be interpreted in the broadest possible manner to effect the greatest amount of coverage, while providing a reasonable, practical, and sensible interpretation consistent with the intent of the parties. *Westmoreland*, 704 So. 2d at 179; *Siegle*, 819 So. 2d at 736. And as discussed, the ambiguity must be resolved in favor of Plaintiffs. *PCR*, 889 So. 2d at 785-786. Nonetheless, a plain and sensible reading of the phrase does not allow recovery for damage that is merely cosmetic or aesthetic, or for damage to those parts of the house that are not structural in nature, such as decorations or fittings. Accordingly, the phrase "structural damage to the building" will be construed as meaning "damage to the structural components of the building, excluding damage that is cosmetic in nature." Whether

9

damage is "cosmetic in nature" and whether damage is to the "structural components" of the building are questions of fact for the jury.

### IV. PENDING MOTIONS FOR SUMMARY JUDGMENT

As a result of this more complete construction of the policy language, the two previous Orders addressing motions for summary judgment are due to be vacated. Three motions for summary judgment are therefore pending: Defendant's Motion for Summary Judgment (Dkt. 11); Plaintiffs' Motion for Partial Summary Judgment (Dkt. 17); and Plaintiffs' Motion for Summary Judgment Pursuant to Joint Stipulation of Fact (Dkt. 47).

#### A. Defendant's Motion for Summary Judgment (Dkt. 11)

Liberty Mutual's motion for summary judgment argues that the definition of "structural damage" contained in the 2011 amendments to § 627.706 should apply retroactively and, alternatively, that the phrase "structural damage to the building" is not ambiguous and should be construed as "damage that impairs the structural integrity of the building." Both of these contentions are rejected *supra*, and the motion (Dkt. 11) is therefore due to be denied. The statutory definition of "structural damage" in the 2011 amendments to § 627.706, *Florida Statutes* may not be applied retroactively to Plaintiffs' policy, which was issued prior to the effective date of those amendments.

#### B. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 17)

Plaintiffs' motion for partial summary judgment seeks (1) an order granting partial summary judgment on the breach of contract claim on the basis of Liberty Mutual's failure to conduct an investigation as required by § 627.707, *Florida Statutes*; (2) an order granting partial summary judgment on Plaintiffs' argument that the definition of "structural damage" in § 627.706 cannot be applied retroactively; and (3) an order granting partial summary judgment on the proper definition

of "structural damage." The third ground for relief requests that the term "structural damage" be construed as "damage to the structure."

For the reasons discussed *supra*, Plaintiffs are entitled to partial summary judgment on the second ground, but not the third. The only issue remaining, therefore, is whether Plaintiffs are entitled to partial summary judgment on their claim that Liberty Mutual violated § 627.707 (*see* Dkt. 17).

As Liberty Mutual correctly argues (*see* Dkt. 19), § 627.707 does not provide an independent cause of action against an insurance company for failing to hire a contractor to perform a geotechnical investigation to exclude sinkhole activity as a contributing cause of the loss. In *QBE Insurance Corp. v. Chalfonte Condominium Apartment Association, Inc.*, the Florida Supreme Court explained that the "primary guide in determining whether the Legislature intended to create a private cause of action is the 'actual language used in the statute.'" 94 So. 3d 541, 551 (Fla. 2012) (quoting *Borden v. E.-Euro. Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006)). There is nothing in the text of § 627.707 "from which one can deduce that the Legislature intended an insured to have a private right of action against an insurer" for failing to hire a contractor to perform a geotechnical investigation. *Id.* Summary judgment will therefore be denied on this contention.[6]

Plaintiffs' Motion for Partial Summary Judgment (Dkt. 17) is therefore due to be granted in part and denied in part.

---

[6] In any event, Plaintiffs did not allege a cause of action based on the failure to hire a contractor to perform an investigation, and summary judgment may be properly denied on that basis. *See Marlborough Holdings Group, Ltd. v. Azimut-Benetti, SpA, Platinum Yacht Collection No. Two, Inc.*, 505 Fed. Appx. 899, 907 (11th Cir. 2013) (affirming district court's grant of summary judgment on civil conspiracy claims not separately pled); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1247 (11th Cir. 2007) ("Because such a claim was not pled by Optimum, the district court was not required to address such a claim in ruling on HCA's summary judgment motion.").

C.   **Plaintiffs' Motion for Summary Judgment Pursuant to Joint Stipulation of Facts (Dkt. 47).**

Relying on the previous Orders interpreting the term "structural damage" as "damage to the structure," the parties entered into a Joint Stipulation of Fact and Plaintiffs' Request for Verdict on Facts (Dkt. 39). Because Plaintiffs' most recent motion for summary judgment (Dkt. 47) is based on the earlier, incomplete construction of the policy, the motion is denied as moot.

V.   CONCLUSION

The phrase "structural damage" is ambiguous, and is construed and interpreted as "damage to the structural components of the building, excluding damage that is cosmetic in nature."

Accordingly, the Order denying Defendant's Motion for Summary Judgment (Dkt. 15) and the Order granting in part and denying in part Plaintiffs' Motion for Summary Judgment (Dkt. 22) are **VACATED**. Defendant's Motion for Summary Judgment (Dkt. 11) is **DENIED**. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 17) is **GRANTED** *in part* and **DENIED** *in part*. Plaintiffs Motion for Summary Judgment Pursuant to Joint Stipulation of Facts (Dkt. 47) is **DENIED** *as moot*.

A status conference will be conducted on **Wednesday, March 26, 2014**, at **3:00 P.M.**, in Courtroom 13B of the Sam M. Gibbons United States Courthouse for the purpose of scheduling trial and the pre-trial conference. Trial counsel shall be present with the their calendars.

**DONE AND ORDERED** this 18th day of March, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record